**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**Miami Division**

JAMES L. BUTLER, JR. and BARI L.
BUTLER,

          Plaintiffs,

vs.

SUKHOI COMPANY, SUKHOI DESIGN
BUREAU, UNITED AIRCRAFT
MANUFACTURING CORP., IRKUT
CORPORATION, SUKHOI CIVIL AIRCRAFT
and THE RUSSIAN FEDERATION,

          Defendants.

_____

CASE NO.: 07-61078-CIV-HIGHSMITH

**MOTION TO DISMISS OF DEFENDANTS RUSSIAN FEDERATION,**
**UNITED AIRCRAFT MANUFACTURING CORPORATION,**
**SUKHOI COMPANY, SUKHOI CIVIL AIRCRAFT, AND**
**IRKUT CORPORATION, AND SUPPORTING MEMORANDUM,**
<u>**OR IN THE ALTERNATIVE FOR SUMMARY JUDGMENT ON COMPLAINT**</u>

      Defendants Russian Federation, United Aircraft Manufacturing Corporation (hereafter

"UAC"), Sukhoi Company, Sukhoi Civil Aircraft, and Irkut Corporation (collectively, the

"Movants") hereby move under Federal Rules of Civil Procedure 9(b), 12(b)(1)-(6), and 56, and

SDFL Local Rules 7.1 and 7.5, as well as the Foreign Sovereign Immunities Act of 1976

(hereafter "FSIA"), Pub. L. 94-583, 90 Stat. 2891, *codified at* 28 U.S.C. §§ 1330, 1332(a)(4),

1391(f), 1441(d), 1602-1611, as amended, to dismiss the Complaint with prejudice or, in the

alternative, for summary judgment on the Complaint.  A separate SDFL Local Rule 7.5C

Statement is attached in support of this Motion.  The Complaint sets forth conclusory allegations

that the Russian Federation and the other Movants, comprising much of the military and civilian

aircraft industry in Russia, are *alter egos* of each other and of Defendant Sukhoi Design Bureau

(hereafter "SDB"), and that the Movants are liable as *alter egos* to pay a judgment assessing damages determined by a jury against SDB. The Complaint should be dismissed because the Court lacks personal jurisdiction, subject matter jurisdiction, and venue under the FSIA, and because it fails to state a claim upon which relief can be granted. In the alternative, the Court should enter summary judgment against Plaintiffs under Rules 12(b) and 56 because the Complaints' conclusory *alter ego* allegations fail to raise any genuine issues of material fact for discovery or trial.

## BACKGROUND

The Complaint seeks enforcement of a judgment entered in *Butler v. Sukhoi Aircraft*, No. 99-7413-CIV-Highsmith (hereafter "*Butler I*"). In that case, the Court granted motions for procedural default, held a jury trial on damages, and entered an Amended Final Judgment for damages and interest in favor of the Plaintiffs and Aerial III, Inc., which is not party to this action. *See* Declaration of Valentin Povarchuk (hereafter "Povarchuk Decl.") Ex. A-F. The defendants in *Butler I* were SDB, "Sukhoi Aircraft," [1] and Advanced Sukhoi Technologies n/k/a Advanced Technologies for Aircraft Manufacturing. SDB is the only Defendant in this action served and named in the *Butler I* judgment. SDB is not represented by undersigned counsel.

The Complaint asserts a single cause of action seeking a declaration that the Russian Federation and all other Defendants herein are *alter egos* of SDB and of each other, *see* Compl. at 5 ¶¶ 33-39, and that therefore the *Butler I* Amended Final Judgment is enforceable against all the Defendants in this action. *Id*. ¶ 40. Plaintiffs seek relief consisting of a judgment against Defendants "in the sum of $3,592,500.00 plus interest from July 23, 2003 and that Plaintiffs have

---

[1]  "Sukhoi Aircraft" is the name used in *Butler I* to refer to an entity identified in proof of service in that case as OKB Sukhoi. OKB is a Russian abbreviation of "design bureau." Povarchuk Decl. at 2 ¶ 8.

execution thereon[,]" as well as a declaration that the Defendants are *alter egos* of each other and that the *Butler I* judgment is enforceable against them jointly and severally. *Id.* at 5-6.

## ARGUMENT

### I.   THE FSIA GOVERNS EXCLUSIVELY THE COURT'S PERSONAL JURISDICTION, SUBJECT MATTER JURISDICTION AND VENUE

The Supreme Court has held that the FSIA "provides the sole basis for obtaining jurisdiction over a foreign state in the courts of this country[,]" *Republic of Arg. v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 443 (1989), both for purposes of establishing liability and for execution of judgments, *Alejandre v. Telefonica Larga Distancia de P.R., Inc.*, 183 F.3d 1277, 1282-83 (11th Cir. 1999), regardless of when a cause of action may have accrued. *Republic of Aus. v. Altmann*, 541 U.S. 677, 697 (2004) (Congress intended that the FSIA should apply retroactively to pre-enactment conduct); *see Guevara v. Republic of Peru*, 468 F.3d 1289, 1294 (11th Cir. 2006) ("The Foreign Sovereign Immunities Act provides the sole basis for obtaining subject matter jurisdiction over a foreign sovereign in the United States") (citing *Beg v. Islamic Republic of Pak.*, 353 F.3d 1323, 1324 (11th Cir. 2003)). If, as here, the FSIA does not permit an action against a foreign state, then the Court lacks subject matter and personal jurisdiction. *See Verlinden B.V. v. Central Bank of Nig.*, 461 U.S. 480, 485 n.5 (1983). The FSIA also controls venue where it is the jurisdictional statute. 28 U.S.C. § 1391(f).

The FSIA clearly applies here because the Russian Federation is a foreign state.[2] If they were to answer the Complaint, the Movants would deny that any Defendant is an

---

[2]  In 1996, the Russian Federation and the United States of America celebrated 200 years of diplomatic relations. *See* U.S. Department of State, *200 Years of U.S.-Russia Relations*, *available at* http://www.state.gov/p/eur/ci/rs/c20880.htm (last visited Feb. 7, 2008).

*alter ego* of the Russian Federation or each other, but it is well-established that a plaintiff's allegations must be taken as true for purposes of a motion to dismiss. *See Saudi Arabia v. Nelson*, 507 U.S. 349, 351 (1993). Here, Plaintiffs allege a single cause of action asserting that the Russian Federation and the other Defendants are *alter egos* of each other, *see* Compl. at 4-5 ¶¶ 31-40, and that allegation must be taken as true solely for purposes of this Motion. Thus Plaintiffs cannot obtain the judgment they seek unless the FSIA permits it, and accordingly they allege jurisdiction based on the FSIA:

> This Court has jurisdiction to hear this action under 28 U.S.C. § 1605(a)(1)(2) and (5) because it involves a foreign state and instrumentalities or agencies of a foreign state not entitled to immunity under 28 U.S.C. § 1603, et seq. of the Foreign Sovereign Immunities Act and under FRCP 69(a) to enforce its own judgments.

*Id.* at 4 ¶ 29. For purposes of this Motion, the Movants do not deny the allegation that this action "involves a foreign state and instrumentalities or agencies of a foreign state[.]" *Id.* Moreover, the Court does not have jurisdiction to enforce its own judgments under Rule 69(a) against a foreign state; rather, the FSIA governs the use of Rule 69(a) to invoke certain local execution procedures.[3] Thus, the FSIA alone governs whether the Court has subject matter jurisdiction.

Plaintiffs' bald conclusion, however, that the Defendants are "not entitled to immunity under 28 U.S.C. § 1603, et seq. of the Foreign Sovereign Immunities Act[,]" *see id.*, is not admitted or presumed to be true. Since the Movants invoke FSIA immunity, the Plaintiffs "must

---

[3] It is the FSIA itself that may permit the application of Rule 69(a) in certain garnishment proceedings. *Alejandre*, 183 F.3d at 1285 (under the FSIA "[w]e must also be guided by relevant principles of Florida garnishment law" in accordance with Rule 69(a)) (citing *Buck Creek Indus., Inc. v. Alcon Constr., Inc.*, 631 F.2d 75, 76 (5th Cir. 1980)); *see Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 313 F.3d 70, 83 (2d Cir. 2002) ("In attachment actions involving foreign states, federal courts . . . apply Fed. R. Civ. P. 69(a), which requires the application of local state procedures"), *cert. denied*, 539 U.S. 904 (2003)).

overcome the presumption that the foreign state is immune from suit in the United States' courts." *See S & Davis Int'l, Inc. v. Yemen*, 218 F.3d 1292, 1300 (11th Cir. 2000).

Therefore the FSIA exclusively governs whether the Court has jurisdiction and venue.

## II.   SUBJECT MATTER JURISDICTION IS LACKING UNDER THE FSIA

The FSIA makes personal jurisdiction dependent in part on the existence of subject matter jurisdiction, as shown below.   The Movants show, first, that the Court is without subject matter jurisdiction and, second, that other requirements for personal jurisdiction are also unmet.

### A.   *The* Butler I *Judgment Is Unenforceable Against A Foreign State And Its Alleged* Alter Egos *Because It Was Entered By Default And Jury Verdict*

The Court may consider facts beyond the pleadings to ascertain its subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1).  *McElmurray v. Consol. Gov't of Augusta-Richmond County*, 501 F.3d 1244, 1251 (11th Cir. 2007).  To the extent that it is necessary to invoke that practice in order to consider the Court's *Butler I* record of proceedings, the Court should do so.  Nothing in the *Butler I* record indicates that Plaintiffs apprised the Court that they viewed any defendant in that action as a foreign state, that they would seek to enforce against a foreign state the judgment they sought, or that the FSIA was even potentially relevant to the Court's subject matter jurisdiction.  Diversity of citizenship was pled, instead, as the sole basis for the Court's subject matter jurisdiction in *Butler I*, Povarchuk Decl. Ex. G at 8 & H, where a foreign state was not a plaintiff.  *See* 28 U.S.C. § 1332(a)(4).  Whether or not the *Butler I* judgment may be valid if the defendants in *Butler I* are not a foreign state, the *Butler I* judgment is not enforceable against a foreign state and its alleged *alter egos*.

The *Butler I* record shows that, upon motions for default, the Court ordered default without setting forth FSIA jurisdictional or merits findings, and subsequently held a jury trial on damages.  *See* Povarchuk Decl. Ex. A-F.  Neither a procedural default of that nature nor a jury

trial can result in a judgment enforceable against a foreign state. If the Plaintiffs were seeking in *Butler I* a judgment enforceable against a foreign state and its alleged *alter egos*, they should have sought one that complied with the FSIA, but they did not.

> The grant of subject matter jurisdiction set forth in the FSIA provides as follows:

> The district courts shall have original jurisdiction without regard to amount in controversy of any *nonjury civil action* against a foreign state as defined in section 1603(a) of this title as to any claim for relief in personam with respect to which the foreign state is not entitled to immunity either under sections 1605- 1607 of this title or under any applicable international agreement.

28 U.S.C § 1330(a) (emphasis added). The referenced § 1603(a) defines a foreign state to include an agency or instrumentality. As demonstrated above, the grant of jurisdiction in § 1330(a) is exclusive of any other provision of American state or federal law concerning this subject matter. *Amerada Hess*, 488 U.S. at 443. Thus the term "nonjury civil action" in § 1330(a) plainly and unambiguously denies subject matter jurisdiction to hold jury trials under the FSIA.

The Eleventh Circuit has held that the jurisdictional grant in the FSIA excludes jury trials, and that plaintiffs' rights to equal protection under Fifth Amendment due process principles, and to a jury under the Seventh Amendment, are not thereby abridged. *See Arango v. Guzman Travel Advisors*, 761 F.2d 1527, 1531-34 (11th Cir.), *cert. denied, sub nom.*, *Arango v. Compania Dominicana de Aviacion*, 474 U.S. 995 (1985). A judgment against a foreign state may not result from a jury trial, "whether the lawsuit is initiated in federal court or removed by the foreign state to that forum." *Id.* at 1532; *accord Gould v. Aerospatiale Helicopter Corp.*, 40 F.3d 1033, 1035 (9th Cir. 1994); *Bailey v. Grand Trunk Lines New England*, 805 F.2d 1097, 1101 (2d Cir. 1986), *cert. denied*, 484 U.S. 826 (1987); *Goar v. Compania Peruana de Vapores*, 688 F.2d 417, 420-23 (5th Cir. 1982); *Rex v. Cia. Pervana de Vapores*, S.A. 660 F.2d 61, 63-64

(3d Cir. 1981), *cert. denied*, 456 U.S. 926 (1982); *Ruggiero v. Compania Peruana de Vapores "Inca Capac Yupanqui"*, 639 F.2d 872, 875-76 (2d Cir. 1981); *Williams v. Shipping Corp. of India*, 653 F.2d 875, 880-81 (4th Cir. 1981), *cert. denied*, 455 U.S. 982 (1982).

Here, the Complaint seeks to impose liability on a foreign state and its alleged *alter egos* in the precise amount determined by the *Butler I* jury. *See* Compl. at 5-6 (seeking judgment against Defendants "in the sum of $3,592,500.00 plus interest from July 23, 2003 and that Plaintiffs have execution thereon"). The Complaint should be dismissed with prejudice because the FSIA does not provide subject matter jurisdiction to do so.

Subject matter jurisdiction is also lacking because 28 U.S.C. § 1608(e) required Plaintiffs "to establish entitlement to relief by providing satisfactory evidence as to each element of the claims upon which relief was sought." *Compania Interamericana Export-Import, S.A. v. Compania Dominicana de Aviacion*, 88 F.3d 948, 951 (11th Cir. 1996) (vacating default judgment). The Eleventh Circuit has explained the reasons for that requirement as follows:

> Congress intended § 1608(e) to provide foreign states protection from unfounded default judgments rendered solely upon a procedural default. H.R.Rep. No. 1487, 94th Cong., 2d Sess. 26 (1976), *reprinted in* 1976 U.S.C.C.A.N. 6604, 6625. Section 1608(e) is modeled after Fed.R.Civ.P. 55(e), which similarly protects the federal government from default judgments based solely upon procedural defaults.

*Id.* at 950-51. In *Dominicana*, for instance, the Eleventh Circuit held that affidavits attesting to the existence of lease agreements, their breach, and the indebtedness due thereunder were insufficient to satisfy the § 1608(e) standard. 88 F.3d at 951.

The *Butler I* record shows that the Plaintiffs moved for entry of procedural defaults, which the Court granted by entering an Omnibus Order declaring the *Butler I* defendants to be in "default" without making any findings of FSIA jurisdiction, or on the merits of each element of the tort claims based on evidence. Povarchuk Decl. Ex. A-F. Further, Plaintiffs do not even

allege that the *Butler I* judgment was served upon the Russian Federation or any of its alleged *alter egos* under § 1608(e), or that a reasonable time has passed under § 1610(c) since such service.

Whether or not the *Butler I* judgment is valid if the putative debtors are not a foreign state, the Court should dismiss the Complaint because the *Butler I* judgment was entered upon procedural default on liability and jury trial on damages, and there is no subject matter jurisdiction under the FSIA to hold a foreign state liable by procedural default or jury trial.

**B.     *The Complaint Fails To Plead Facts To Overcome FSIA Jurisdictional Immunity From Suit And From Attachment, Arrest Or Execution***

The Movants do not deny the allegation that this case "involves a foreign state and instrumentalities or agencies of a foreign state[,]" *see* Compl. at 4 ¶ 29, and they assert their full FSIA jurisdictional immunity from liability and from execution. "In order to overcome the presumption of immunity [under the FSIA], a plaintiff must prove that the conduct which forms the basis of its complaint falls within one of the statutorily defined exceptions." *S & Davis*, 218 F.3d at 1300 (citing *Republic of Arg. v. Weltover, Inc.*, 504 U.S. 607, 610-11 (1992)). Here, the Complaint is devoid of any allegations concerning conduct that falls within any one of the FSIA's immunity exceptions. The Complaint therefore fails to plead any facts to establish the Court's subject matter jurisdiction as required, and should therefore be dismissed.

The FSIA sets forth two separate types of immunity from the jurisdiction of state and federal courts.[4]  Under 28 U.S.C. § 1604, the FSIA includes immunity from jurisdiction to impose liability upon a foreign state, and under *id.* at § 1609 the FSIA provides that, subject to

---

[4]  The Russian State's sovereign rights and immunities in the law of nations have a foundation and a dignity that are broader than those that Congress may grant under the United States Constitution.  The FSIA recognizes certain aspects of the law of nations.

certain international agreements, "a foreign state shall be immune from attachment arrest and execution except as provided in sections 1610 and 1611 of this chapter." Even if a judgment is valid, the judgment creditor must still overcome immunity from execution under §§ 1610 and 1611. Thus in *Morel de Letelier v. Chile*, 748 F.2d 790, 798-99 (2d Cir. 1984), *cert. denied*, 471 U.S. 1125 (1985), the district court entered a judgment that pierced the corporate veil of the Chilean national airline as sanctions for its refusal to participate in discovery in aid of execution of an FSIA judgment against the Republic of Chile, but the Court of Appeals reversed based on the execution immunity provisions of the FSIA, which left the original judgment against Chile both legally valid and practically unenforceable.

All that Plaintiffs allege in regards to the FSIA is the bald conclusion that Defendants are "not entitled to immunity[.]" Compl. at 4 ¶ 29. That is insufficient under §§ 1330, 1603-1611.

The definition of "foreign state" in § 1603 includes agencies or instrumentalities for purposes of § 1605. The Complaint fails to allege any facts sufficient to establish, for purposes of imposing liability on Defendants, that the "foreign state" has "waived its immunity explicitly or by implication, notwithstanding any withdrawal of . . . waiver[,]" 28 U.S.C. § 1605(a)(1); that the action bears relation to a "commercial activity" of the foreign state in the specific manner and having the location and effects Congress provided, *see id.* at § 1605(a)(2); that "rights in property taken in violation of international law are in issue[,]" *see id.* at § 1605(a)(3); that succession or gift rights to property are in issue, *see id.* at § 1605(a)(4); that "money damages" for certain tortious acts not involving discretionary functions, misrepresentation or deceit are sought, *see id.* at § 1605(a)(5)(A)-(B); that the action involves enforcement of an agreement to submit to arbitration, *see id.* at § 1605(a)(6); or that the claim concerns "torture, extrajudicial killing, aircraft sabotage, hostage taking," or certain other conduct in the circumstances specified

in detail by Congress. *See id.* at § 1605(a)(7). Likewise, the admiralty, maritime lien and foreclosure exceptions are not pled. *See id.* at §§ 1605(b)-(d).

In order to establish jurisdiction to enter a post-judgment order permitting execution under § 1610(c), Plaintiffs would need to allege facts sufficient to show that attachment, arrest or execution is sought as to property "used for commercial activity in the United States" and that the foreign state has "waived its immunity from attachment in aid of execution or from execution either explicitly or by implication, notwithstanding any withdrawal of the waiver[,]" 28 U.S.C. § 1610(a)(1); "the property is or was used for the commercial activity upon which the claim is based," *see id.* at § 1610(a)(2); the execution relates to expropriations, other violations of international law, succession, gift, or non-diplomatic immovable property, *see id.* at §§ 1610(a)(3)-(4); the property relates to certain types of insurance, *see id.* at § 1610(a)(5); or the judgment is based on an arbitral award. *See id.* at § 1610(a)(6). If execution were sought against instrumentalities rather than alleged *alter egos* of a foreign state, Plaintiffs would have to establish waiver of immunity from execution, or a relationship between the judgment and a claim for which immunity does not apply. *See id.* at §§ 1610(b)(1)-(2).

The Complaint should be dismissed because Plaintiffs have alleged no facts sufficient to establish jurisdiction on the basis of any of the foregoing immunity exceptions.

### C.     *The Complaint's Allegations Trigger Absolute Immunity Under § 1611(b)(2)*

Rather than plead facts supporting any immunity exception, the Complaint's allegations trigger absolute immunity under the FSIA. Plaintiffs seek to enforce the *Butler I* judgment as to unspecified "correspondent bank accounts" that are "use[d]" by the Russian Federation, Sukhoi Company "and" SDB "to facilitate some of their international civil and military aircraft

transactions."  Compl. at 4 ¶ 29.  That allegation triggers the absolute immunity provided in the following FSIA provision:

> (b) Notwithstanding the provisions of section 1610 of this chapter, the property of a foreign state shall be immune from attachment and from execution, if—
> . . .
>> (2) the property is, or is intended to be, used in connection with a military activity and
>>> (A) is of a military character, or
>>> (B) is under the control of a military authority or defense agency.

28 U.S.C. § 1611(b)(2).  As alleged in the Complaint, the property as to which the Court might order execution proceedings under § 1610(c) consists of correspondent bank accounts that are, or are intended to be, used "in connection with" both civilian and "military aircraft transactions[,]" which are of a "military" character because they consist of "facilitat[ing] . . . military" transactions.  *See id.*; Compl. at 4 ¶ 27.  By alleging that the civilian and military uses of the accounts are commingled, the Complaint avers that these alleged accounts are used "in connection with a military activity" within the scope of § 1611(b)(2) immunity.

The second element for § 1611(b)(2) immunity is pled in the Complaint.  It alleges that UAC was formed by a "resolution" signed by President Vladimir Putin "'to maintain the scientific-industrial potential of Russia's aircraft manufacturing complex, and to ensure the country's security and defense capabilities[,]'" *id.* at 3 ¶ 16, and adds that "the chairman of the board of directors of UAC is Sergei, Borisovich [sic], Deputy Prime Minister of Russia, responsible for the defense industry, including the aviation sector."  *Id.* ¶ 19.  Moreover, UAC allegedly "includes" other Defendants, *id.* ¶ 20, all of which are alleged *alter egos* of UAC and the Russian Federation.  *Id.* at 5 ¶¶ 36-39.  Thus, according to these allegations, all of the Defendants constitute a national aviation defense establishment controlled by the Russian Ministry of Defense.  Accordingly, even if the correspondent bank accounts were not alleged to

be "of a military character" under § 1611(b)(2)(A), they are expressly alleged to be "under the control of a military authority or defense agency" under § 1611(b)(2)(B).

Thus the Complaint, by commingling the use of the correspondent bank accounts for both civilian and military transactions, avers that the accounts are used "in connection with a military activity" consisting of military aircraft transactions, and also that the accounts are under Ministry of Defense control, thus satisfying the elements of § 1611(b)(2) and (B).  The Complaint should be dismissed because those allegations establish absolute immunity under § 1611(b)(2).

## III.    THERE IS NO *IN PERSONAM* JURISDICTION OVER ANY DEFENDANT

The Court should dismiss the Complaint pursuant to Rule 12(b)(2), (4) and (5) for lack of *in personam* jurisdiction because the Court lacks subject matter jurisdiction, and because Plaintiffs have not complied with the FSIA's service of process requirements.  Even if the FSIA were not controlling, the Complaint fails to allege facts sufficient to aver personal jurisdiction.

### A.    *The Court Does Not Have Personal Jurisdiction Because Plaintiffs Have Not Complied With § 1608(a)*

The FSIA, 28 U.S.C. § 1330(b), provides that "[p]ersonal jurisdiction over a foreign state shall exist as to every claim for relief over which the district courts have jurisdiction under subsection (a) where service has been made under section 1608 of this title."  The Supreme Court therefore holds that there is personal jurisdiction under 28 U.S.C. § 1330(b) "wherever subject matter jurisdiction exists under subsection (a) and service of process has been made under 28 U.S.C. § 1608."  *Verlinden*, 461 U.S. at 485 n.5.  Personal jurisdiction is absent here because, as shown above, there is no subject matter jurisdiction.  There is also no personal jurisdiction because strict compliance with 28 U.S.C. § 1608(a) is required regardless of actual notice, and Plaintiffs have not complied with § 1608(a).

Although the Complaint alleges that this action "involves a foreign state and instrumentalities or agencies of a foreign state[,]" Compl. at 4 ¶ 29, the applicable FSIA service provision is 28 U.S.C. § 1608(a) (service on a foreign state) rather than *id*. at § 1608(b) (service on an instrumentality of a foreign state). The entirety of the relief Plaintiffs seek upon a single alleged cause of action, *see* Compl. at 4-5 ¶¶ 31-40, is a declaration that all of the Defendants, including the Russian Federation, are *alter egos* of each other and thus liable jointly and severally for the *Butler I* judgment. Taking as true for purposes of this Motion that Defendants are the Russian State, Plaintiffs must serve the Defendants as the Russian State under § 1608(a).

Substantial compliance and actual notice do not suffice for service upon a foreign state under § 1608(a). While the Eleventh Circuit reluctantly held once that substantial compliance may be adequate under 28 U.S.C. § *1608(b)*, it "admonish[ed] those seeking to invoke the FSIA to follow the service provisions it contains" and warned that "[t]here is no excuse for departure from the dictates of the statute." *Harris Corp. v. Nat'l Iranian Radio & Television*, 691 F.2d 1344, 1352 n.16 (11th Cir. 1982). The Eleventh Circuit has never held that substantial compliance with 28 U.S.C. § *1608(a)* suffices for service upon a foreign sovereign, and such a conclusion would be error. As the Fifth Circuit has correctly explained, "virtually no authority suggests that substantial compliance would suffice under section 1608(a) as to foreign governments[.]" *Magness v. Russian Fed'n*, 247 F.3d 609, 617 (5th Cir. 2001).

In *Magness* the Fifth Circuit vacated a default judgment against the Russian Federation because the plaintiff, having mailed the summons and notice of suit to a Texas official for transmittal to President Boris Yeltsin, and directly to a Russian official other than the Minister of Foreign Affairs, did not strictly comply with § 1608(a). *Id.* at 613, 618-19. Other courts concur that the plain meaning of the FSIA, fortified by considerations of international comity between

states, require strict compliance with § 1608(a).  *See Gerritsen v. Consulado General de Mex.*, 989 F.2d 340, 345 (9th Cir.), *cert. denied*, 510 U.S. 828 (1993) (strictly enforcing § 1608(a)); *Alberti v. Empresa Nicaraguense de La Carne*, 705 F.2d 250, 253 (7th Cir. 1983) (same).

In enacting § 1608(a), Congress intended four potential means of service.  Where as here there is no "special arrangement" of any kind between the parties for service of process, 28 U.S.C. at § 1608(a)(1), the FSIA states that service might be attempted through any "applicable international convention on service of judicial documents[.]"  *See id.* at § 1608(a)(2).  The Hague Convention on the Service Abroad of Judicial and Extra-Judicial Documents in Civil and Commercial Matters (hereafter "Service Convention") is suspended between the United States and Russia,[5] and thus § 1608(a)(2) is not available.  Sections 1608(a)(3) and (4) of Title 28, however, permit service of three (3) documents (the Complaint, summons, plus a "notice of suit"), together with Russian translations, "by any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the head of the ministry of foreign affairs of the foreign state concerned," *id.* at § 1608(a)(3), or to the Secretary of State's Director of Special Consular Services.  *Id.* at § 1608(a)(4).  None of these requirements has been met.

Because Plaintiffs' claim is that all the Defendants are one with the Russian Federation, there is no purpose to be served in allowing Plaintiffs a period of time to serve any Defendant other than the Russian Federation.  As shown above, taking Plaintiffs' allegations as true for purposes of this Motion, Plaintiffs must serve each Defendant as a foreign state, but Congress did not presume to impose upon the Russian Minister of Foreign Affairs the duty, proper to a

---

[5]  The U.S. Department of State Russia Judicial Assistance website advises that the Russian Federation objects to an attempt by the U.S. to charge fees to cover the costs of a contractor designated to serve as the U.S. Central Authority.  *See* U.S. Department of State, *Russia Judicial Assistance, available at* http://travel.state.gov/law/info/judicial/judicial_3831.html (last visited Feb. 7, 2008).

secretary of state of one of the states of the American Union, to notify local corporations on behalf of foreign courts. If the Clerk of the Court were to mail multiple sets of summonses, Complaint, and notice of suit, with Russian translations, for all of the Defendants to the Russian Minister of Foreign Affairs, he would have no obligation to notify them as if they were organs of the Russian government. This circumstance is neither a paradox nor surprising; rather, it is the result of the fact that, where § 1608(a)(1) and (2) are not available, Congress did not contemplate service on alleged *alter ego* corporations by diplomatic channels under § 1608(a)(3) or (4).

The Court should conclude that it lacks personal jurisdiction as to any Defendant. If the Court finds *arguendo* that it has subject matter jurisdiction and that this suit may otherwise proceed, then it may allow Plaintiffs 30 days to comply with 28 U.S.C. § 1608(a) as to the Russian Federation, *see Magness*, 247 F.3d at 619, but the Court should quash service under Rule 12(b)(4) and (5), and dismiss the Complaint under Rule 12(b)(2), as to other Defendants because the FSIA does not provide for service on alleged *alter ego* corporations under § 1608(a)(3) or (4).

**B.     *Even If The FSIA Were Inapplicable, Plaintiffs Have Not Alleged Facts To Make A* Prima Facie *Showing Of Compliance With Florida's Long-Arm Statute Or Due Process Requirements***

Even if the Court finds that the FSIA does not govern personal jurisdiction in this case, the Complaint fails to allege any facts to satisfy the Florida long-arm statute, Fla. Stat. § 48.193 (2007), or the due process principles of the Fifth Amendment to the U.S. Constitution. *See Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623, 626 (11th Cir. 1996); *Vermeulen v. Renault U.S.A., Inc.*, 985 F.2d 1534, 1545 (11th Cir. 1993); *S & Davis*, 218 F.3d at 1303-04. The Complaint omits any allegation that a Defendant has continuous, systematic and substantial contacts with Florida, or otherwise has any presence, connection or activity in Florida sufficient

to afford grounds for general jurisdiction.   It also fails to allege that any Defendant has purposefully established significant contacts with Florida that constitute the direct basis for the Plaintiffs' claims for purposes of specific jurisdiction.   Plaintiffs thus fail to make any *prima facie* allegations of personal jurisdiction, and no affidavit rebuttal of any such allegation is possible or necessary.

## IV.   THIS VENUE IS NOT PERMITTED BY THE FSIA

The FSIA, 28 U.S.C. § 1391(f), specifies where Plaintiffs' *alter ego* claim may be brought.   This is not a "judicial district in which a substantial part of the events or omissions giving rise to the claim occurred," *see id*. at § 1391(f)(1), because "the claim" solely asserts that the Defendants are *alter egos* of each other.   Any "events or omissions giving rise to the claim" could only have occurred, if at all, in Russia. S*ee MCI Telecommunications Corp. v. O'Brien Mktg., Inc*., 913 F.Supp. 1536, 1541 (S.D.Fla. 1995) (Highsmith, J.) (applying three elements of federal common law *alter ego* rule) (citing *United Steelworkers of Am. v. Connors Steel Co.*, 855 F.2d 1499, 1506 (11th Cir. 1988), *cert. denied*, 489 U.S. 1096 (1989)).

Section 1391(f)(2) does not apply because the claim is not asserted in admiralty, and subsection (3) does not apply because the Complaint claims that the Defendants *are* the Russian Federation, not separate agencies or instrumentalities, and in any case it is not alleged that any of the Defendants is licensed to do business or does business in Florida.  *See id*. at § 1391(f)(2)-(3). Where, as here, subsections (1), (2) and (3) are inapplicable, the FSIA only permits the action to be brought "in the United States District Court for the District of Columbia if the action is brought against a foreign state or political subdivision thereof."  *Id*. at § 1391(f)(4).

While here the Plaintiffs might have tried to assert tort claims arising from a stunt airplane crash in Florida, all of which might have been subject to a different venue analysis, they

did not do so.  Rather, the Complaint treats all issues relating to a Florida crash as having been finally resolved in *Butler I*.  Instead, it places at issue solely the Defendants' relationships in Russia.  The Court should dismiss this action under Federal Rule of Civil Procedure 12(b)(3) because the sole potential FSIA venue for this action is the District of Columbia.

## V.     THE COMPLAINT FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED AND THUS SHOULD BE DISMISSED UNDER RULE 12(b)(6)

The Supreme Court has held that, where a plaintiff alleges that a foreign state and a corporation do not have separate juridical status, the question should be resolved according to principles that "are common to both international law and federal common law, which in these circumstances is necessarily informed both by international law principles and by articulated congressional policies." *First Nat'l City Bank v. Banco Para El Comercio Exterior de Cuba*, 462 U.S. 611, 623 (1983) (*Bancec*).  Florida law therefore does not govern Plaintiffs' claim.

This Court has held that the federal common law alter ego rule "requires that three elements be proved in order to pierce the corporate veil[,]" and that these elements are:

> (1) Control, not mere majority or complete stock control, but complete domination, not only of finances, but of policy and business practices in respect to the transaction attacked so that the corporate entity as to this transaction had at the time no separate mind, will or existence of its own; and
> (2) Such control must have been used by the defendant to commit fraud or wrong, to perpetrate the violation of a statutory or other positive legal duty, or a dishonest and unjust act in contravention of plaintiff's legal rights; and
> (3) The aforesaid control and breach of duty must proximately cause the injury or unjust loss complained of.

*MCI*, 913 F.Supp. at 1541 (citations omitted).  The Complaint should be dismissed because it fails to state a claim upon which relief can be granted in accordance with the federal common law *alter ego* rule.

The Complaint does not allege "complete domination, not only of finances, but of policy and business practices[,]" *id.*, nor does it make a connection between such domination and any

aspect of the crash of the aircraft at issue in *Butler I.*   The Complaint also violates the requirement in Federal Rule of Civil Procedure 9(b) to plead with particularity the fraud element of the federal common law rule.   *See Bd. of Trustees of Teamsters Local 863 Pension Fund v. Foodtown, Inc.*, 296 F.3d 164, 173 n.10 (3d Cir. 2002).   In addition, the Complaint alleges no facts to show that any such complete domination of finances, policy and business practices, and wrongful acts including fraud or dishonesty, with respect to each individual Defendant, proximately caused any injury or unjust loss to the Butlers.

In this case, the federal common law *alter ego* rule should be "informed both by international law principles and by articulated congressional policies[,]" *Bancec*, 462 U.S. at 623, which here consist of the strong principle, informed by both international law and the Congress' intent in the FSIA, that foreign states and their corporations should be treated as separate legal persons.   As the Supreme Court has explained, "[s]eparate legal personality has been described as 'an almost indispensable aspect of the public corporation[,]'" *id.* at 625 (citation omitted), such that "government instrumentalities established as juridical entities distinct and independent from their sovereign should normally be treated as such."   *Id.* at 626-27.

In fact, the FSIA defines "agency or instrumentality" synonymously to mean a (1) "separate legal person, corporate or otherwise, *and* (2) . . . an organ of a foreign state or political subdivision thereof, *or* a majority of whose shares or other ownership interest is owned by a foreign state or political subdivision thereof . . . ."   28 U.S.C. § 1603(b)(1)-(2) (emphasis added).   Thus Congress provided in the FSIA that a separate legal person could be an organ of a foreign state.   Even if the Complaint were correct that the corporate Defendants are mere organs of the Russian Federation, Congress provided in § 1603(b) that a corporation may be both a state organ

and a separate legal person, and the federal common law *alter ego* rule cannot deprive state organs of separate legal personality merely because they are organs of a state.

Therefore the Complaint fails to plead any facts under the federal common law *alter ego* rule despite the strong presumption of separation between foreign states and their corporations, which extends even to corporations that function as organs of foreign states.  It thus fails to assert a claim upon which relief can be granted and should be dismissed under Rule 12(b)(6).

## VI.   IN THE ALTERNATIVE, THE COURT SHOULD ENTER SUMMARY JUDGMENT ON THE COMPLAINT AGAINST PLAINTIFFS

A Complaint making conclusory *alter ego* allegations should not entitle Plaintiffs to discovery proceedings and trial to probe the inner workings of Russia's military and civilian aviation establishments.  Conclusory allegations that two Defendants have business premises at the same address in Moscow, that UAC was established by presidential decree, or that the Russian Minister of Defense chairs UAC's board of directors, do not entitle Plaintiffs to judicial assistance to investigate the inner workings of the Russian State and military and civilian aviation companies in which it may have an ultimate ownership interest.  Doing so would cause affront to international comity and weaken all federal courts' standing to enforce their orders in the community of nations.

For those reasons, it is particularly appropriate for the Court to apply here the rule upheld by the Eleventh Circuit in *Reflectone, Inc. v. Farrand Optical Co., Inc.*, 862 F.2d 841, 844-46 (11th Cir. 1989) (citing *Dania Jai-Alai Palace, Inc. v. Sykes*, 450 So.2d 1114, 1121 (Fla. 1984)). There, the Eleventh Circuit upheld under Florida law an order that granted leave to amend a complaint that sought to pierce the corporate veil, declined to permit discovery of that claim, and granted summary judgment because conclusory pleadings did not raise any genuine issue of material fact for discovery or a trial on the alleged piercing of the corporate veil.  If the Court

does not dismiss the Complaint with prejudice, the Court should follow *Reflectone* and enter summary judgment against the Plaintiffs because their conclusory *alter ego* claim does not raise any genuine issues of material fact for discovery or trial that might overcome the presumption of separation between a foreign state, its agencies and instrumentalities.

## CONCLUSION

For the foregoing reasons, the Court should dismiss the Complaint with prejudice or, in the alternative, enter summary judgment against the Plaintiffs.

Respectfully submitted,

*Rodriguez A. Rodriguez*
Raquel A. Rodriguez, Esq. (FBN 511439)
rrodriguez@mwe.com
McDermott Will & Emery LLP
201 South Biscayne Boulevard
Miami, Florida  33131-4336
Tel.: 305-358-3500
Fax: 305-347-6500

Michael P. Socarras, Esq. (*pro hac* admission pending)
msocarras@mwe.com
Valentin Povarchuk, Esq. (*pro hac* admission pending)
vpovarchuk@mwe.com
McDermott Will & Emery LLP
600 Thirteenth Street, N.W.
Washington, D.C.  20005-3096
Tel.: 202-756-8000
Fax: 202-756-8087

*Counsel for Defendants Russian Federation,*
*United Aircraft Manufacturing Corporation,*
*Sukhoi Company, Sukhoi Civil Aircraft, and*
*Irkut Corporation*

Dated:  February 8, 2008

<u>**CERTIFICATE OF SERVICE**</u>

**I HEREBY CERTIFY** that on the 8th day of February, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which automatically sends an electronic notification to all counsel of record.

*/s/ Raquel A. Rodriguez*
Raquel A. Rodriguez